IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12 CV 132

| MICHAEL MEAD, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| GASTON COUNTY, REGINALD BLOOM, individually and officially, WILLIAM H. SAMPSON, individually and officially, and CALIVIN SHAW, individually and officially, | ) |
| Defendants. | ) |

This matter is before the Court upon the Defendants' Motion for Judgment on the Pleadings (Doc. No. 75), Defendants' memorandum in support (Doc. No. 76), Plaintiff's response (Doc. No. 78), Defendants' reply (Doc. No. 80), and Plaintiff's notice of additional authority (Doc. No. 83). This matter is now ripe for disposition.

## I.  FACTUAL BACKGROUND

On November 4, 2011, Plaintiff Michael Mead brought this action alleging that Defendants violated his civil and constitutional rights through his arrest, temporary imprisonment, and criminal trial. The case was transferred from the U.S. District Court for the District of South Carolina on February 27, 2012 (Doc. No. 44). Plaintiff filed an Amended Complaint on May 18, 2012, in which he sought compensatory and punitive damages and specifically alleged that the Defendants engaged in malicious prosecution and obstruction of justice (Doc. No. 59).

This action arises out of Plaintiff's previous criminal investigation, arrest, and trial after his pregnant fiancée, Lucy Johnson, was murdered and her home burned. Plaintiff's Amended Complaint alleges a series of mistakes and misgivings on the part of the Defendant police

1

officers during the investigation, including failing to pursue leads against a more likely suspect, James Spelock. (Am. Compl. ¶ 48, Doc. No. 59). Plaintiff also alleges that Defendants concealed and misrepresented facts by, among other things, advancing a number of unsupportable and specious theories of his culpability (*Id.* ¶ 52), securing perjurious testimony from inmates (*Id.* ¶ 52), withholding the results of a gunshot residue examination that failed to connect him to the crimes (*Id.* ¶¶ 55-59), concealing the fact that an arson dog failed to detect accelerants at Mr. Mead's home (*Id.* ¶¶ 60-64), claiming that Mr. Mead stole Ms. Johnson's engagement ring (*Id.* ¶¶ 69-74), and failing to record or memorialize information that contradicted Defendants' theories of Plaintiff's culpability (*Id.* ¶¶ 82-83). Following the investigation, a Grand Jury indicted Mr. Mead for First Degree Murder, First Degree Rape, Robbery with a Dangerous Weapon, First Degree Arson, and First Degree Burglary. The prosecutor dismissed the First Degree Burglary charge. During the trial, the judge dismissed the Robbery with a Deadly Weapon and First Degree Rape charges and the jury later found Mr. Mead not guilty of either First Degree Arson or First Degree Murder.

The Amended Complaint alleges nine claims for relief: 1) unlawful seizure (under the Fourth Amendment and 42 U.S.C. § 1983); 2) malicious prosecution (under the Fourth Amendment and 42 U.S.C. §1983); 3) substantive and procedural due process violations (under the Fourteenth Amendment and 42 U.S.C. § 1983); 4) trespass by public officers; 5) malicious prosecution; 6) substantive due process (brought in the alternative under the North Carolina Constitution, Art. I, §§ 1, 19); 7) false arrest and false imprisonment (brought in the alternative under the North Carolina Constitution, Art. I, §§ 19, 20); 8) obstruction of justice; and 9) negligent infliction of emotional distress. (*See* Am. Compl.).

## II. LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings "test[s] the legal sufficiency of the complaint and will result in claims being dismissed, 'where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts.'" *Jones v. Penn Nat'l Ins. Co.*, 835 F. Supp. 2d 89, 95-96 (W.D.N.C. 2011) (quoting *Continental Cleaning Serv. v. U.P.S.*, 1999 WL 1939249, at *1 (M.D.N.C. 1999)). It scrutinizes the complaint in a manner similar to a motion to dismiss, except "on a 12(c) motion, 'the court is to consider the answer as well as the complaint . . . . [as well as] documents attached to the pleadings.'" *Bradley v. Ramsey*, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (citations omitted). In this analysis, "the Court 'must accept the nonmovant's allegations as true; viewing the facts in the light most favorable to the nonmoving party.'" *Id.* (citations omitted). While the Court retains discretion when "'allegations . . . contradict matters properly subject to judicial notice or by exhibit,'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), this is tempered in "a civil rights complaint [where the Court] ' . . . must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Id.* (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

As a general rule, pleadings must entail "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To withstand a motion for judgment on the pleadings, a complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and

have 'enough facts to state a claim to relief that is plausible on its face.'" *Demetry v. Lasko Products, Inc.* 284 Fed. App'x. 14, 15 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). This standard instructs that a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. However, these broad requirements still "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Immunity

#### i. Qualified Immunity—Federal Law Claims

As a preliminary matter, the Court addresses the Defendants' assertion of qualified immunity as a defense to Plaintiff's federal claims. According to the Fourth Circuit, "[q]ualified immunity protects government officials from suit for damages when their conduct does not violate a 'clearly established' constitutional right." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citation omitted). In order to avoid an immunity dismissal, "a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). While immunity bars some claims, it also works to support individual rights. *See Corum v. Univ. of N.C. Bd. of Governors*, 330 N.C. 761, 786, 431 S.E.2d 276, 291 (1992) ("It would indeed be a fanciful gesture to say on the one hand that citizens have constitutional individual civil rights that are protected from encroachment actions by the State, while on the other hand saying that . . . [these individuals] cannot sue because of the doctrine of sovereign immunity."). Further, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson*, 555 U.S. at 238-39.

4

Rather than creating a necessary condition for plaintiffs to allege, qualified immunity acts as a defense that defendants must plead. *Id.* at 640 ("[T]he burden of pleading [immunity] rests with the defendant."). In order to qualify for immunity, the defendant must "claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Id.* at 641 (citation omitted). The burden shifts because of a potential evidentiary imbalance—"[t]here may be no way for a plaintiff to know in advance whether the official has such a belief or, indeed, whether he will ever claim that he does. The existence of a subjective belief will frequently turn on factors which a plaintiff cannot reasonably be expected to know." *Id.*

The Defendants broadly raise qualified immunity in their answer and specifically request immunity. However, when taking all inferences in favor of the non-moving party, it is at least plausible that Defendants violated an established right during Plaintiff's pretrial arrest, detention, and continued prosecution, and that insufficient probable cause existed for their actions, given the officers' alleged misconduct. Mr. Mead alleges that the Defendants withheld or obstructed access to exculpatory information, including the results of a gunshot residue examination and a search of his home for accelerants, and generally failed to record or memorialize information that contradicted their theories of Plaintiff's culpability. (*See* Am. Compl. Doc. No. 59). Mr. Mead also alleges that Defendants advanced a number of specious theories and false or misleading information that contributed to a seizure unsupported by probable cause. (*See id.*). Simply put, the Plaintiff here pled as much as he was able in order to show potential violations of established constitutional rights. *See* discussion *infra* Part II.B. Consequently, the issue of qualified immunity cannot be resolved without additional fact-finding, rendering it premature to determine at this time.

### ii. Public Official Immunity—State Law Claims

Defendants also assert that any potential liability on their part is precluded by the public official immunity doctrine at the state level. Plaintiff argues that his allegations of malicious behavior which exceeded the doctrine's protective scope foreclose any immunity.

An official enjoys public official immunity "'[a]s long as [he] lawfully exercises the judgment and discretion with which he is invested by virtue of his office . . . , keeps within the scope of his official authority, and acts without malice or corruption.'" *Epps v. Duke Univ., Inc.* 122 N.C. App. 198, 203, 468 S.E.2d 846, 851 (1996) (citations omitted). Plaintiffs' claims may face immunity defenses when they "arise from some action taken while the tortfeasor-public official is acting under the color of state authority." *Id.* at 204, at 851. However, any claim brought against an official in his official capacity is "tenable only if the State consents to the suit, or a statutory waiver of immunity applies." *Id.* (citations omitted). Waiver may occur when state entities, including counties, obtain insurance coverage, and applies up "to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." N.C. GEN. STAT. §153A-435(a) (2013); *see also Lunsford v. Renn*, 207 N.C. App. 298, 308 (2010).

Even when official immunity applies, it may be pierced and individuals "'remain *personally* liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties.'" *Epps*, 122 N.C. App. at 204, 468 S.E.2d at 851 (emphasis in original) (quoting *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 526 (1991)). Malicious behavior includes "when [one] wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* (citations omitted); *see also Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003). Additionally, the North Carolina Supreme Court has established that "when there is a clash

between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Corum v. Univ. of N.C. Bd. of Governors*, 330 N.C. 761, 786, 413 S.E.2d 276, 292 (1992). In these instances, "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009).

Here, the county purchased liability insurance, thus allowing for official capacity suits. At this stage in the case, the Court must accept the Plaintiff's allegations and reasonable inferences as true. Plaintiff alleges specific actions taken by the Defendants that were designed to keep information from independent bodies despite its potential exculpatory value. These actions, if true, would exhibit behavior that a reasonable man would know to be contrary to his duty, especially given the nature and severity of the crimes with which the Plaintiff was charged. *See id.* Plaintiff alleges that these efforts were indeed prejudicial and injurious. As such, it is not proper to bar Plaintiff's claims pursuant to public official immunity at this stage in the case.

**B. Fourth Amendment violation for Unreasonable Seizure and Malicious Prosecution under 42 U.S.C. § 1983**

Section 1983 provides a federal claim for individuals whose rights have been violated. There are two main requirements to properly state a claim under this statute: (1) "the plaintiff must allege that some person has deprived him of a federal right" and (2) "he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). There is no dispute that each Defendant herein is a state actor acting under color of state law. The analysis is limited to whether or not the Plaintiff was deprived of a federal right. The Plaintiff asserts that because the Defendants lacked probable cause, their actions violated his clearly established constitutional rights. Defendants claim that

the warrant for Mr. Mead's arrest and the Grand Jury indictments issued against him constitute independent intervening actions that terminate any continuing liability.

Because malicious prosecution simply requires an additional termination element, the forgoing analysis utilizes malicious prosecution to refer to both malicious prosecution and unreasonable seizure claims. The crux of this analysis turns on whether probable cause existed and, consequently, whether a clearly established right was violated. *See Myrick v. Cooley*, 91 N.C. App. 209, 212, 371 S.E.2d 492, 493 (1988) ("An arrest made in violation of the fourth amendment protection against unreasonable seizures of the person will give rise to a cause of action under Section 1983, . . . and under fourth amendment standards, the validity of the arrest turns upon the existence of probable cause." (citations omitted)).

Section 1983 malicious prosecution claims require "a plaintiff . . . [to] allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). For liability to attach between the officers' behavior and the alleged violations, there cannot be any "'intervening acts of other participants in the criminal justice system' [that] insulate a police officer from liability." *Id.* (citation omitted). However, liability still can attach to police officers when they "have lied to or misled the prosecutor, . . . failed to disclose exculpatory evidence to the prosecutor, . . . or unduly pressured the prosecutor to seek the indictment." *Id.* at 647-48.

While the aforementioned standards apply generally, claims of misconduct in obtaining an arrest warrant are subject to *Franks v. Delaware*'s "two prong test": (1) "plaintiffs must allege that defendants 'knowingly and intentionally or with a reckless disregard for the truth' either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the

8

affidavits misleading" and (2) "plaintiffs must demonstrate that those 'false statements or omissions [are] "material," that is, "necessary to"' a neutral and disinterested magistrate's authorization of the search." *Evans*, 703 F.3d at 649-50 (insertion in original) (citations omitted).

The proceedings at issue here terminated in the Plaintiff's favor. The Amended Complaint alleges that Officers Shaw and Bloom played "supervisory or leadership roles in the investigation," thus providing an allegation plausibly sufficient to establish causation. (Am. Compl. ¶ 22, Doc. No. 59). Plaintiff alleges further that despite "substantial evidence" that another individual had committed the crime in question, "Defendants instead focused their attention on Mr. Mead as the murderer, and undertook a persistent effort to hide exculpatory evidence and obstruct Mr. Mead's (and the Court's) access to such evidence." (*Id.* ¶ 48). Given Plaintiff's claims that Defendants had leadership roles in the investigation and that they obstructed access to potentially exculpatory evidence, it is at least plausible that Defendants played a causal role in Plaintiff's seizure and that his seizure was unsupported by probable cause.

The Court must also examine the Defendants' claim of an intervening intermediary. The Plaintiff alleges that questionable information, although brought out in the trial process, played an integral role in his arrest, indictment, and the initial trial process. Specifically, Plaintiff's complaint asserts that Defendants caused this information to taint the decisions of the magistrate judge and Grand Jury. The Plaintiff makes specific allegations about particular Defendants, including the claim that although Defendant Bloom knew that someone other than Mr. Mead took Ms. Johnson's engagement ring, he failed to produce the information. (*Id.* ¶¶ 71-72). Plaintiff alleges that Defendant Sampson failed to memorialize an interview that did not support Defendants' case against Mr. Mead and that this failure contributed to a seizure unsupported by probable cause. (*See id.* ¶ 83; *see also* Defs.' Answer to Am. Compl. ¶ 83, Doc. No. 64). These

9

allegations of Defendants misleading independent decision-makers constitute specific claims that, at this stage, provide a sufficient causal basis to allow the claim against them to stand.

The Plaintiff also satisfies the pleading burden for arrest warrant misconduct. As to the first element, the Plaintiff alleges that the Defendants disregarded an affirmative obligation to provide exculpatory evidence concerning the lack of accelerants at Mr. Mead's home until June 1, 2011, even though he was arrested on arson charges on January 9, 2009. (Am. Compl. ¶¶ 63-64, 85). This provides a specific allegation of a fact-based omission that could have rendered the 2009 arrest affidavits misleading. *See Evans*, 703 F.3d at 650. Second, the fact that a search failed to detect any accelerants at the home of a man charged with first degree arson would seem pertinent to the determinations of a neutral and disinterested magistrate. As a result, this Court cannot conclude that the Plaintiff has failed to allege a cause of action as to malicious prosecution or Fourth Amendment violations under § 1983.

## C. Fourteenth Amendment violations for substantive and procedural due process under 42 U.S.C. § 1983

Plaintiff alleges that because Defendants l
provide or accurately present exculpatory evidence, he was denied substantive and actual due process of law during his investigation, detainment, and prosecution. In defense, the Defendants disclaim any liability because the evidence was immaterial and assert that prosecutors bear the full duty of disclosure.

Under *Brady v. Maryland*, "the prosecution deprives a criminal defendant of due process when it suppresses evidence that is 'favorable to an accused . . . where the evidence is material to either guilt or to punish, irrespective of the good faith or bad faith of the prosecution.'" *Fullwood v. Lee*, 290 F.3d 663, 685 (4th Cir. 2002) (quoting *Brady v. Maryland*, 373 U.S. 83, 87, (1963)).

*Brady* violations have three requirements: "(1) '[t]he evidence at issue must be favorable to the accused'; (2) the 'evidence must have been suppressed by the State, either willfully or inadvertently'; and (3) the evidence must be material, *i.e.*, 'prejudice must have ensued.'" *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L.Ed.2d 286 (1999)). Evidence is material when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 687 (citations omitted). Further, "the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler*, 527 U.S. at 280-81.

As the Defendants are police officers who participated in and led the investigation and, when accepting Plaintiff's allegations as true, withheld material, exculpatory information, this claim falls under *Brady*. Plaintiff's allegations that the evidence at issue not only would have exculpated him but would also have indicated a different perpetrator meet the first burden of favorability. Second, the Plaintiff alleges that the Defendants knew about this information and failed to provide the potentially exculpatory evidence they had obtained to independent decision-makers. At the pleading stage, acceptance of Plaintiff's allegations that the Defendants knew this information and failed to share it until forced to do so, *after* his initial arrest, indictment, and the initiation of the trial process, provides a sufficient basis to satisfy the second prong. With reference to the third prong, the Plaintiff obtained this favorable information at a later date, thus raising the question of whether he can establish any prejudice when the charges against him were either dropped or he was found not guilty. However, it is plausible that had the Plaintiff had access to this information, he could have made a stronger defense initially and ended the proceedings at an earlier time. Thus, at this early stage in the case, the Court will deny the Motion for Judgment on the Pleadings as to this claim and allow the claim to proceed.

### D. Trespass by Public Officers

The Plaintiff asserts that a trespass occurred through false arrest and imprisonment because the defendants lacked probable cause; conversely, the Defendants assert that independent intermediaries' continuation of the legal process against Mr. Mead shows probable cause and the lack of any violation.

In North Carolina, false imprisonment involves the "'illegal restraint of one's person against his will'" and encompasses a false arrest. *Myrick v. Cooley*, 91 N.C. App. 209, 212, 371 S.E.2d 492, 494 (1988) (quoting *Mobley v. Broome*, 248 N.C. 54, 56, 102 S.E.2d 407, 409 (1958)). Lack of probable cause is a necessary condition for the Plaintiff's claim, as "[p]robable cause is an absolute bar to a claim for false arrest." *Williams v. City of Jacksonville Police Dep't*, 165 N.C. App. 587, 596, 599 S.E.2d 422, 431 (2004) (citations omitted). While a "conviction conclusively establishes the existence of probable cause," *Myrick*, 91 N.C. App. at 213, 371 S.E.2d at 495, the lack of a conviction is not similarly dispositive. Significant for this analysis, "'[t]he existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established, it is a question of law for the court. Conversely, when the facts are in dispute the question of probable cause is one for the jury.'" *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 619, 538 S.E.2d 601, 612 (2000) (quoting *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978)). In cases where arrests are made with a warrant, "[p]robable cause for an arrest is presumed valid unless plaintiff presents 'allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *Beeson v. Palombo*, 727 S.E.2d 343, 348 (N.C. Ct. App. 2012) (citation omitted).

At this stage, Plaintiff's allegations of reckless behavior by the Defendants in obtaining an arrest warrant are accepted as true. These allegations require reasonable inferences to support Plaintiff's claims. He alleges specific behaviors by Defendants, including failure to properly conduct a gunshot residue examination and failure to adequately follow leads against Mr. Spelock, which could plausibly have been reckless and indirectly support the assertion that Defendants behaved with disregard for the truth. Additionally, the allegation that Defendants failed to provide information to Plaintiff who, though released, still had to wear an ankle monitor, link the alleged behavior to continued restrictions on Mr. Mead's freedom. (Am. Compl. ¶ 86, Doc. No. 59). Given that these allegations conflict with Defendants' version of the events, and that discovery has not yet occurred, this claim will not be dismissed.

**E. Malicious Prosecution**

Plaintiff asserts that Defendants pursued criminal proceedings against him without probable cause and with the necessary malice to constitute malicious prosecution. In response, the Defendants assert that they had probable cause and that the Plaintiff did not sufficiently allege specific failings by particular Defendants to discredit the existence of probable cause.

To satisfy the elements of malicious prosecution in North Carolina, the "plaintiff must establish that the defendant: (1) instituted, procured or participated in the criminal proceeding against plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of plaintiff." *Williams v. Kuppenheimer Mfg. Co.,* 105 N.C. App. 198, 200 412 S.E.2d 897, 899 (1992). As a technical requirement, "[a]n action for malicious prosecution must be based on valid process." *Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012) (citation omitted). Additionally, under state law, "allegations that the defendant 'instituted, procured, or

13

participated in' a criminal proceeding" can be sufficient to establish causation. *Id.* at 658 (citations omitted).

First, when analyzing Defendants' institution, procurement, or participation in the criminal proceeding, it is important to recognize that "[t]he act of giving honest assistance and information to prosecuting authorities does not render one liable for malicious prosecution." *Williams,* 105 N.C. App. at 201, 412 S.E.2d at 899 (citations omitted). A jury could decide, however, that the behavior "went further than merely providing assistance and information," and thus rendered the Defendants potentially liable. *See id.* Illustratively, the North Carolina Court of Appeals found that in a case where "[e]xcept for the efforts of defendant, it is unlikely there would have been a criminal prosecution of plaintiff[,] . . . the trial court was correct in determining this was a factual matter for the jury." *Id.*

Second, as to the existence of probable cause, the North Carolina Court of Appeals also determined that:

> While our Supreme Court has said that both a grand jury indictment and a waiver of a preliminary hearing in a criminal action establish a *prima facie* showing of probable cause, nevertheless, such a finding or waiver is not conclusive in a subsequent malicious prosecution action, and the question of probable cause is still an issue for the jury.

*Id.* at 201-02, at 900 (citations omitted). In this analogous case, the court found that while evidence in favor of probable cause included "the grand jury returning a bill of indictment and [the plaintiff's] waiver of the preliminary hearing," additional evidence undermining probable cause included "the court's dismissal of the criminal charge . . . at the close of the State's evidence." *Id.* at 201, at 901. Given the conflicting evidence, the court determined that "[t]hese were clearly matters for the jury to resolve" but the burden rests "on the plaintiff to show the lack of probable cause." *Id.*

14

Third, malice incorporates "both actual and legal malice," *id.* and "legal malice may be inferred from a lack of probable cause," *id.* at 203, at 901 (citations omitted). A determination of "[w]hether probable cause exists is a question . . . for the jury." *Allison v. Food Lion*, 84 N.C. App. 251, 254, 352 S.E.2d 256, 257 (1987) (citing *Taylor v. Hodge*, 229 N.C. 558, 560, 50 S.E.2d 307, 308-09 (1948)).

As to the first element, accepting the Plaintiff's allegations as true, Defendants played a pivotal role in Mr. Mead's prosecution. Their investigation and alleged choice of which evidence to emphasize contributed to the Plaintiff's being brought to trial. The Plaintiff specifically alleges that "[o]n March 5, 2009, *based on information provided by Defendants*, the prosecution against Mr. Mead was formally certified to proceed capitally." (Am. Compl. ¶ 87, Doc. No. 59) (emphasis added). Thus, on the alleged facts, the Plaintiff has adequately pled the first element.

As analyzed in previous sections, while probable cause requires fact-finding, at the current stage, acceptance of the Plaintiff's allegations as true establishes a plausible lack of probable cause. Here, there were Grand Jury indictments and a warrant for Mr. Mead's arrest; however, the prosecutor's decision to drop some charges, the court's dismissal of other charges at the closure of evidence, and the jury's verdicts in favor of Mr. Mead's innocence on the remaining charges plausibly call into doubt the existence of probable cause. Additionally, if Plaintiff's allegations are taken as true, the Defendants may have missed an opportunity to investigate a far more likely suspect. As such, the Plaintiff has sufficiently pled the second element.

Third, malicious prosecution claims necessarily require the Plaintiff to establish malice. As legal malice involves the lack of probable cause, and the second element of this analysis establishes an alleged lack of probable cause, the Plaintiff has also sufficiently pled this element.

Fourth, the criminal trial terminated in Mr. Mead's favor. As such, the Plaintiff has sufficiently pled the elements of malicious prosecution to survive the current motion.

**F. Substantive Due Process under the North Carolina Constitution, Article I, §§ 1, 19**

As an argument in the alternative, Plaintiff asserts that Defendants violated his due process rights through their mistreatment and concealment of evidence in the legal process. Defendants assert that Plaintiff had the opportunity to bring his claim but, as he failed to adequately demonstrate a due process violation, it should be dismissed.

Notably, under North Carolina law, "'in the absence of an adequate state remedy,' one whose state constitutional rights have been abridged has a direct claim under the North Carolina Constitution; otherwise, no direct constitutional claim is recognized." *Davidson v. City of Statesville*, 2012 WL 1441406, at *4 (W.D.N.C. 2012) (quoting *Craig v. New Hanover Cnty. Bd. of Educ.*, 678 S.E.2d 351, 356-57 (N.C. 2009)). An adequate remedy exists when the plaintiff's remedial option "'provide[s] the possibility of relief under the circumstances.'" *Id.* (quoting *Craig*, 678 S.E.2d at 355). At present, Mr. Mead has viable state law alternatives and concedes that this state constitutional claim is brought in the alternative. As such, Defendants' motion to dismiss this claim on the pleadings is granted.

**G. False Arrest and False Imprisonment under the North Carolina Constitution, Article I, §§ 19, 20**

In the alternative, Plaintiff alleges false arrest and false imprisonment against Defendants under the North Carolina Constitution. Defendants assert that the Federal and North Carolina constitutions provide the same level of protection for these claims and the Plaintiff therefore has an adequate alternative remedy. Defendants argue that both claims should accordingly be dismissed. Again, North Carolina law dictates that a Plaintiff can only bring a direct North

Carolina constitutional claim when he has insufficient alternatives under state law. *See id.* Mr. Mead has a viable alternative for the issues of false arrest and false imprisonment through his trespass by public officers claim. As such, Plaintiff's state constitutional claims are dismissed.

## H. Obstruction of Justice

Plaintiff asserts that the Defendants also obstructed justice through their behavior during his investigation, indictment, and trial. In *Evans v. Chalmers*, however, the Fourth Circuit determined that, despite the fact that some "North Carolina courts have interpreted common-law obstruction of justice to include fabrication of evidence . . . and destruction of evidence," no case "recogniz[ed] a common-law obstruction of justice claim against a police officer for his actions relating to a criminal proceeding." 703 F.3d 636, 658 (4th Cir. 2012) (citing *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326, 334 (1984) (fabrication of evidence); *Grant v. High Point Reg'l Health Sys.*, 184 N.C. App. 250, 645 S.E.2d 851, 855 (2007) (destruction of evidence)). The court was emphatic, adding "logic would seem to compel this conclusion" and determined "although such a[n action] may be a remote 'possibility,' it is not a reality." *Id.* (citations omitted). This Court declines to challenge the Fourth Circuit's interpretation of North Carolina law on this point and grants Defendants' motion as to this claim.

## I. Negligent Infliction of Emotional Distress

Finally, Plaintiff asserts a claim of negligent infliction of emotional distress. Defendants assert that probable cause precludes any action under this tort, which simply serves as a reframing of the previous false arrest and imprisonment claims.

Three elements are required to accurately allege negligent infliction of emotional distress: "(1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) defendant's conduct, in fact, caused

17

plaintiff severe emotional distress." *Robblee v. Budd Servs., Inc.*, 136 N.C. App. 793, 796, 525 S.E.2d 847, 849 (2000) (citation omitted). Severe emotional distress includes "any emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)). The Supreme Court of North Carolina found insufficient evidence of severe emotional distress in *Waddle v. Sparks* where the plaintiff failed to "forecast . . . any medical documentation of plaintiff's alleged 'severe emotional distress' nor any other forecast of evidence of 'severe and disability' psychological problems," such as psychological visits or the utilization of medication. *Id.* at 85, at 28 (citation omitted).

Plaintiff alleges that Defendants' alleged investigatory failures caused him emotional distress. (*See* Am. Compl. ¶¶ 146-47, Doc. No. 59). However, at no point does he allege any disabling medical condition analogous to the standard set out in *Waddle*. As such, Plaintiff fails to allege sufficient injury to satisfy a claim of negligent infliction of emotional distress and Defendants' motion is granted with respect to this claim.

### J. Gaston County's Governmental Liability

Plaintiff also seeks to hold Gaston County liable for his criminal prosecution. Defendants assert that Gaston County cannot be held liable for any behavior of individual Defendants and that there is no basis for county liability.

In *Monell v. Department of Social Services of New York*, the United States Supreme Court concluded that "a municipality cannot be held liable *solely* because it employs a tortfeasor . . . . Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the

18

government as an entity is responsible under § 1983." 436 U.S. 658, 691, 694 (1978) (emphasis in original); *see also Clayton v. Branson*, 170 N.C. App. 438, 451-52, 613 S.E.2d 259, 269 (2005) ("'[U]nlike various government officials, municipalities do not enjoy immunity from suit . . . under § 1983 . . . [, they] cannot be held liable unless a municipal policy or custom caused the constitutional injury.'" (citation omitted)). The Plaintiff has not alleged any municipal policy or custom responsible for the Defendants' alleged behavior and consequences. Thus, he has not sufficiently stated a claim for Gaston County's liability under § 1983. Therefore, Defendants' motion with respect to this claim is granted and Gaston County is dismissed.

## IV. ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. No. 75) is hereby Granted in part and Denied in part as follows:

(1) Defendants' Motion is granted as to Plaintiff's substantive due process and his false arrest and false imprisonment claims (brought in the alternative under the North Carolina Constitution), obstruction of justice claim, and negligent infliction of emotional distress claim (claims VI, VII, VIII and IX);

(2) Defendant Gaston County is hereby dismissed; and

(3) Defendants' motion that the Amended Complaint be dismissed as to the Fourth Amendment § 1983 claim, the malicious prosecution claim under the Fourth Amendment and § 1983, the Fourteenth Amendment Substantive and Procedural Due Process claim under § 1983, the trespass by public officers claim, and the malicious prosecution claim (Claims I-V) is hereby denied.

**SO ORDERED.**

Signed: November 1, 2013

Graham C. Mullen
United States District Judge